■ In the Matter of HEMPSTEAD DEMOCRATIC CLUB et al., Respondents, v INCORPORATED VILLAGE OF HEMPSTEAD et al., Appellants.—In a proceeding pursuant to CPLR article 78 to compel the appellants to permit petitioners to use an auditorium in Kennedy Memorial Park for the regular monthly

meetings of the Hempstead Democratic Club, the appeal is from a judgment of the Supreme Court, Nassau County (Burstein, J.), entered July 6, 1984, which granted the petition and directed the appellants to permit the petitioners to use said auditorium upon payment of the appropriate fees and subject to reasonable restrictions.

Judgment affirmed, with costs.

Appellant Village of Hempstead operates an auditorium on the premises of the Kennedy Memorial Park which is owned by the village. A provision of the regulations governing the park's use states that "[p]olitical groups or Secret Societies may not use the facilities of the Park to conduct meetings or to gather informally to hold discussions pertaining to their respective organizations". Other organizations are allowed to use the park after making proper arrangements. In practice, many organizations, including ones concerned with political issues, such as the NAACP, the Black and Hispanic Voters' League and a tenants' organization, have been allowed to use the auditorium and other park facilities.

When petitioner Hempstead Democratic Club sought permission to use the auditorium for monthly meetings, permission was denied based on the aforesaid regulation. Appellants state that the rule is interpreted to apply only to "regularly constituted partisan political groups having a nexus with a political party" and only as to their conducting of "business meetings". As justification for treating "partisan political clubs" differently from all other groups, appellants argue that the use of the park by such clubs "would tend to politicize the function of the park and create an [inappropriate] aura of partisan political business activity thereon" and would allow the solicitation and collection of political contributions in violation of Civil Service Law § 107 (3).

None of these proffered reasons can be considered a compelling basis for this differential treatment of groups such as petitioners. Since the park is used by numerous other groups, including some with significant political involvement and many with no political involvement at all, it cannot be said that the additional use by partisan political clubs for business purposes could have any significant effect on the character or "aura" of the park (cf. Widmar v Vincent, 454 US 263, 274). Appellants have failed to explain why "political business activity" by political parties has an impact any different in nature from business activity by nonpartisan political groups such as the NAACP, or nonbusiness political activity by any political group.

The limitations provided in the Civil Service Law bear no relation to the activities appellants have prohibited. The prohibitions of Civil Service Law § 107 apply to solicitations and collections of funds, by or from government employees in government offices. The purpose of the statute is to shield public employees from the pressures to make political contributions for not wholly voluntary reasons such as job-related pressures (*People v Haff,* 47 NY2d 695, 700 [Gabrielli and Wachtler, JJ., concurring]; *People ex rel. Johnson v Connolly,* 168 App Div 919, 920, *appeal dismissed* 216 NY 706). The statute is to be narrowly construed to meet this purpose while not impinging on other legitimate political activities (*People v Haff,* 47 NY2d 695, *supra; People v Haff,* 53 NY2d 997, 999; *cf. Buckley v Valeo,* 424 US 1). It is intended to apply only to fund-raising activities in government offices and other rooms occupied for similar "governmental purpose[s]" (Civil Service Law § 107 [3]). This does not extend to political meetings conducted on premises which happen to be owned by and rented from a government entity.

Appellants' explanations appear to be belated attempts to justify a rule that has no permissible basis. The concern about an aura of political business activity bears no relation to the original written regulation, which bars use of the park's facilities to all "political groups" and for any, not just business, purposes. Moreover, the feared political contributions are at least as likely to occur in nonbusiness political gatherings, such as rallies or fund-raising dinners, as they would in business meetings, the only activity appellants state they do not permit.

The prohibition was also improper because the auditorium and other park facilities have been opened to general public use by all kinds of organizations, including political ones. Even though an auditorium is not that kind of public property "immemorially * * * held in trust for the use of the public * * * for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. C.I.O., 307 U. S. 496, 515*" (*Perry Educ. Assn. v Perry Local Educators' Assn.,* 460 US 37, 45), it has become such a "public forum" by virtue of the village's opening it "for use by the public as a place for expressive activity" (*Perry Educ. Assn. v Perry Local Educators' Assn., supra,* at p 45; *Widmar v Vincent,* 454 US 263, *supra*). All persons and groups have a "constitutional right of access [to such public forums] and the State must demonstrate compelling reasons for restricting access" (*Perry Educ. Assn. v Perry Local Educators' Assn.,*

*supra,* at p 55). No compelling reason for such restrictions has been demonstrated here.

Accordingly, the judgment of Special Term granting the petition is affirmed. Lazer, J. P., Gibbons, Bracken and Niehoff, JJ., concur.